(33 App. Div. 164.)

STERNE v. METROPOLITAN TELEPHONE & TELEGRAPH CO.

(Supreme Court, Appellate Division, First Department. August 10, 1898.)

INJUNCTION AGAINST TELEPHONE COMPANY—ASSIGNMENT OF ASSETS BY COMPANY—LIABILITIES OF ASSIGNEE.

After an action against a telephone company, to restrain it from removing the plaintiff's telephone, as threatened by it, and to compel it to furnish him with service at a reasonable rate, was at issue, the defendant assigned all its property, choses in action, and other assets to another company, which agreed to assume and discharge all the defendant's debts, contracts and liabilities, and thereupon the defendant corporation was dissolved. *Held,* upon plaintiff's motion to bring in the assignee company and serve a supplemental summons and complaint, that the acts and threats of the original defendant constituted no cause of action against its assignee, and that the motion should be denied.

Appeal from special term, New York county.

Action by Simon Sterne against the Metropolitan Telephone & Telegraph Company. From an order granting leave to plaintiff to serve a supplemental summons and bring in a new defendant, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

James C. Carter, for appellant.
William B. Hornblower, for respondent.

RUMSEY, J. This action was begun in the month of January, 1895. The complaint alleged in substance that the Metropolitan Telephone & Telegraph Company was a corporation organized un-

der the laws of this state, engaged in the public service of furnishing telephone instruments in the city of New York, and connecting them by wire with the central office, by means of which its customers could communicate with other persons and each other. It was alleged that the plaintiff was a customer of the defendant, and had had in his office for several years a telephone which had been put there by the defendant, by means of which he enjoyed the privilege of telephonic communication throughout the city of New York and elsewhere at a rate which he had agreed to pay, and which he alleged was a reasonable rate for the service which he received. The complaint further stated that the defendant was the only corporation furnishing telephonic service in the city of New York; that shortly before the beginning of the action it had advanced its rates to its customers to an amount which was exorbitant and unreasonable, and endeavored to impose upon them new and unreasonable restrictions as a condition of permitting them to enjoy the use of the telephones; that the plaintiff had refused to pay these unreasonable rates, or to submit to such restrictions; and that the defendant had threatened, if he did not comply with its demands, to remove his telephone, and deprive him of the privilege of that sort of communication. The relief demanded was that the defendant be restrained from removing the telephone from the plaintiff's office, and that it be required to continue rendering telephone service to the plaintiff at the former rate, or such rate as might be reasonable. The theory upon which the action was brought was that there had been given to the defendant a franchise to perform services for the people which were public in their nature, and that it was bound to perform those services at a reasonable rate. An answer was interposed by the defendant, and an injunction was granted restraining the defendant from removing the telephone from the plaintiff's office during the pendency of the action. The plaintiff alleged that on the 26th of June, 1896, an agreement was made between the defendant, of the first part, and the New York Telephone Company, of the second part, assigning to the New York Telephone Company all the property, choses in action, and other assets of the defendant, which agreement contained a provision, substantially, that all the debts, contracts, and liabilities incurred by, or which were at that time justly binding upon or chargeable against, the defendant, were to be assumed, discharged, and performed by the New York Telephone Company. It was alleged also in the affidavit of the plaintiff that the defendant claimed to have taken proceedings in accordance with section 57 of the stock corporation law (chapter 932 of the Laws of 1896) for its dissolution, and that it was actually dissolved. Upon that condition of affairs a motion was made that the New York Telephone Company be substituted as defendant in the place of the Metropolitan Telephone & Telegraph Company, and that the plaintiff should have leave to serve a supplemental summons and complaint setting up the facts by reason of which it was claimed that the New York Telephone Company was a proper party defendant. That

motion was granted, and from the order granting it this appeal is taken.

The plaintiff did not see fit to serve with his motion papers a proposed supplemental complaint, and we are therefore left to conjecture in what way it is claimed that the cause of action which he had against the defendant has been transmuted to a right to maintain an action against the new corporation. It appears that the old corporation has been dissolved, but that fact is of no importance whatever. The mere dissolution of the old corporation conveys no rights, nor does it impose any liability, upon the new one. It appears from the motion papers that the defendant has sold to the New York Telephone Company its property and franchises, and the New York Telephone Company has agreed to assume and discharge all debts, contracts, and liabilities incurred by, or which are justly binding upon or chargeable against the defendant. If the New York Telephone Company has any liability at all to the plaintiff, it must come into existence because of this provision of the contract. The claim against the defendant is that it endeavored to impose unreasonable restrictions upon the use of its telephone, and to charge an unreasonable price for it. This is the sole ground upon which the action is sought to be maintained. It arises solely out of the personal act of the defendant. It does not necessarily accompany any of its franchises, or any right of property; nor is it to be inferred, because the defendant has insisted upon an unreasonable rate of compensation for the use of its telephones, and imposed unreasonable restrictions upon that use, that anything of the kind will be attempted by the new corporation. From the mere fact that the new corporation has taken the property of the defendant there does not arise any duty to maintain a telephone system, nor any right on the part of the plaintiff to compel that company to carry on the business. Such duty of a corporation, and the correlative right of the plaintiff, so far as he has any, arise solely out of the franchise which the new company has to maintain telephone lines in the city of New York. But that franchise is something which it did not get from the defendant, but is a new thing granted by the state, and came into existence after the organization of the new corporation, as a result of its compliance with the provisions of the statute. Until it had acquired that franchise, and then acquired the property rights of the defendant, it had no relation whatever with the plaintiff, even if it can be said to have any relation after that acquisition was made. But conceding that, when it took the property rights of the defendant, it also assumed towards the plaintiff the duty which it is claimed lay upon the defendant to furnish the plaintiff with telephonic communication at a reasonable rate, it is quite clear that there has been no violation of that duty by reason of which the New York Telephone Company has subjected itself to be sued at the hands of the plaintiff. If it be conceded that this new company, having acquired the franchise from the state, and having acquired the property rights which belonged to the defendant, is bound, upon

the application of the plaintiff, to furnish him with the means of telephonic communication at reasonable rates, and without undue restrictions,. there is no presumption that it will refuse to perform that duty upon proper demand. There is no allegation that it ever has refused, or that it has ever had an opportunity to refuse. Therefore the plaintiff has no cause of action against it arising out of any of its own acts. It is equally clear, for the same reason, that it cannot maintain against this new company an action based upon the refusal of the old company to do any act which the law imposed upon it. Any such refusal was in the nature of a tort, and did not create a contract liability; and while the old company, under the provisions of chapter 932 of the Laws of 1896, may still be liable for damages for a refusal to furnish to the plaintiff that which the law required it to furnish, the right of the plaintiff to compel that company, by a judgment, to furnish this convenience, had expired because of the dissolution of the company; and its right to proceed against the new company has never come into existence, because the new company has never refused to perform the duties which it owes towards the plaintiff by reason of the possession of its franchise. We see no reason, therefore, why the plaintiff should have been permitted to bring the new company into this action. The case of Prouty v. Railroad Co., 85 N. Y. 272, is not in point. In that case the original defendant had been merged in the new corporation which had assumed the legal obligations and liabilities of the old company. The obligation sued upon in that action was a contractual one, and by the express terms of the contract the new corporation was liable for it. In this case, as we have seen, the liability of defendant to an action arises from the fact that it has refused to perform what the plaintiff claims is an obligation imposed upon it by the statute. That refusal has not been adopted by the new corporation, and there is no reason to believe that it will be adopted; and, if the new corporation refuses to perform its legal duty, it can only be compelled to do so by reason of its own refusal, and in an action brought after that refusal shall have taken place.

For these reasons the order appealed from should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.